JOHN J. VINGI *et al. vs.* FRANK R. READ.
FEBRUARY 16, 1944.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

6

See also, 68 R. I. 484.

Moss, J.    This is an action of ejectment brought to establish the plaintiffs' title in fee simple to a certain tract of land, consisting of thirty acres and a fraction of an acre, which is situated in the town of East Providence in this state and from which the defendant, some years before the bringing of the action, had ejected them.

In an amended count, which was added to their declaration some months after the action was begun and which was based upon general laws 1938, chapter 438, §2, concerning the establishing of title to real estate by adverse possession for ten years, the plaintiffs alleged that prior to the month of May, 1932, they and their predecessors in title had been for the period of ten years in the uninterrupted, quiet, peaceful and actual seizin and possession of this tract of land, claiming the same as their sole and rightful estate in fee simple.

This additional count was traversed by the defendant and it was upon the issue thus made that the case was finally disposed of in a jury trial in the superior court, at the conclusion of which the trial justice, upon a motion by the plaintiffs, directed a verdict in their favor for possession of the land.   The case is now before us solely on the defendant's exceptions to that direction and to the denial of his

motion for the direction of a verdict in his favor, no other exception being insisted upon before us.

The plaintiffs, in support of their claim of a record title to the real estate in dispute, introduced in evidence a recorded deed, the validity of which is not in question, to them by Alvin S. Mancib and Ethel B. Neves, son and daughter and sole heirs at law of Antone S. Mancib, deceased, with a release of curtesy by the husband of Ethel B. Neves. This deed was delivered on January 11, 1932. Antone S. Mancib, hereinafter referred to as Mancib, left no will and no widow and it is not disputed that whatever right, title and interest, if any, he had in this real estate at the time of his death in September 1931 passed to the plaintiffs by this deed, and remained in them when they brought this action.

It was proved that Mancib, by a warranty deed to him from Addison S. Hawes and Ella D. Hawes, in her right, dated, acknowledged and duly recorded on March 22, 1907, received whatever right, title and interest she then had in the land which is now in dispute in this case, and which is described in that deed as follows, the Runnins River therein referred to being a small stream which in this section runs along the boundary line between this state and Massachusetts:

"A certain lot of land with all the buildings and improvements thereon, situate in the said Town of East Providence, near Mason's Hill and is called the Kent lot, and is bounded as follows beginning at the southwest corner of the lot where the barn stands, thence northeast about ten rods bounding northwesterly by land of Albert E. Medbery thence northerly about sixty rods bounding westerly by said Medbery's land thence easterly by land of Francis W. Peck, to Runnins River, thence southeasterly with the river to land of said Albert E. Medbery, thence southwesterly by said Medbery's land about twenty five rods to land of Lucas W. Read, thence westerly by said Read's land about thirty rods to the place of beginning, containing about thirty acres more or less with the right of way to pass and

repass from the highway to the barn on said lot, and in front of said barn to drive in and out with a team and across the northerly end of said Lucas W. Read's Mason's lot so called to the highway. Being the same premises conveyed to me Ella D. Hawes by deed from Charles R. Read recorded in deed book No. 40 at page 397."

There was also put in evidence a warranty deed, duly executed, acknowledged and recorded on March 15, 1900, from Charles R. Read, the grandfather of the defendant, to Ella D. Hawes, by which he purported to convey to her the same lot of land of a little over thirty acres and similarly described.

According to uncontradicted evidence at the trial, the plaintiffs, after receiving the deed first above referred to, which purported to convey to them the tract of land in East Providence the title to which is in issue in this case and also another tract of land adjoining that tract and lying to the southwest of it and being about twenty-two and one-half acres in area, had an examination made of the title to these properties. They were later informed by the examiners that prior to a deed of June 24, 1889 from Charles R. Read to Mary E. Greene and hereinafter again referred to, purporting to convey this tract of a little over thirty acres, it had consisted of two parcels, one of approximately twenty-two acres and another adjoining it on the southeast and having an area of about nine acres. They were also informed by the examiners that the former of these two parcels had been deeded in 1870 to Louisa E. Read in the settlement of her father's estate and that no deed conveying her title to that parcel to Charles R. Read or any one else appeared in the records of land evidence of the town.

After getting this information the plaintiffs made efforts to procure deeds to them of any rights, titles and interests in that parcel of land from persons who might have received any such rights, titles or interests from Louisa E. Read, directly or indirectly. Learning of these efforts, the defendant procured from many, though not all, of the heirs of

Louisa E. Read, she having died, quitclaim deeds of all their respective rights, titles and interests in and to the tract of about thirty acres involved in the instant case. Not long afterwards, relying upon these deeds, he entered upon this tract, excluded therefrom persons who were thereon by authority from the plaintiffs, put some fences around it and laid claim to it. Thereafter the plaintiffs brought this present action to determine the title to this property.

At the trial, copies of plats, which show the tract of land in dispute and adjoining land and other land in the vicinity and which are not inconsistent with each other, were put in evidence by the adversary parties. In these plats there is shown a barn at the southwesterly corner of the parcel of about nine acres, with a right of way leading therefrom to the highway a short distance to the south.

There was introduced in evidence at the trial a certified copy of the record of a mortgagee's deed of July 9, 1881, conveying what was clearly this parcel of about nine acres. In that deed that parcel was described as bounded northerly by land of Charles R. Read and easterly by Runnins river. This indicates very clearly that the above-mentioned parcel of land to the north, of approximately twenty acres, had before the date of that deed become the property of Charles R. Read. It was shown by uncontradicted and unimpeached evidence at the trial that the above-mentioned parcel of about nine acres, with the barn at its southwesterly corner, became the property of Charles R. Read on January 3, 1885.

Charles R. Read, on June 24, 1889, made a warranty deed, hereinbefore mentioned, of this parcel of about nine acres, together with the parcel of about twenty-two acres to the north of it, the whole making up the tract of about thirty and four-tenths acres, which is the tract in dispute in this case, to Mary E. Greene, who on the same date made a mortgage to him of the entire tract. It was shown from the records of land evidence that on March 15, 1900, this mortgage was foreclosed by him and the property was bought

in by him; and also that, as hereinbefore stated, it was by him, by a deed of the same date, conveyed to Ella D. Hawes, who on March 22, 1907, conveyed it to Mancib.

The evidence above described as to the record title of the property in dispute in this case is not directly pertinent to the sole issue before us, which is that of title by adverse possession, the only ground upon which the trial justice directed a verdict for the plaintiffs. But it does show a good chain of title to Mancib beginning with the deed of June 24, 1889 by Charles R. Read to Mary E. Greene and indicates very strongly that Mancib had good reason to believe and doubtless did believe that he had a good title to the land in dispute. And therefore it is proper that it be considered for its bearing upon the matter of the interpretation of, and the effect to be given to, the evidence for the plaintiffs on the vital issue now before us, *viz.*, whether he had been for ten years in the "uninterrupted, quiet, peaceful and actual seizin and possession" of the tract of land in question, claiming it to be his "proper, sole and rightful estate in fee simple", as required by the statute involved in this case.

In considering such testimony it should also be kept in mind that, as shown by evidence and admitted by the defendant, Mancib for many years before his death owned a tract of land in East Providence of about twenty-two and one-half acres and situated to the west of the tract in question here and owned also another tract of land, located in Massachusetts and directly across the Runnins river from the northerly part of the tract involved in this case. A bridge over this river has for many years connected the two tracts of land.

Joseph S. Neves testified that he married Mancib's daughter on November 28, 1918, and that during the period from January, 1919 he and his wife lived at the Mancib home in Providence until January 1932, when, as above stated, the farm was conveyed to the plaintiffs; that during this period Mancib, until his death in September 1930, tilled,

plowed and planted the tract of about thirty acres now in dispute and harvested the crops, put his pigs there for two summers and cut hay there; and that in 1931 the tract was used by tenants to whom a lease had been made by his heirs, who were the executors of his will.

Neves testified also that during the period from the spring of 1919 until 1931 or 1932 he visited the farm hundreds of times and saw Mancib working the land; that the barn on the tract was used by Mancib every year for storage of hay; and that he knew that beginning with the year 1919 and ending with the year 1930 Mancib cultivated and used that land every year.

He further testified that until 1924 Mancib did not live continuously on this farm, but lived and was domiciled in Providence until his wife's death in that year; that beginning in 1915 Mancib went to the farm daily and from about the middle of June in 1919 he remained on it, except that from some time in the fall until about the middle of June he would spend only his week-ends, from sometime on Saturday till sometime on Sunday, in his Providence home, having on the farm considerable livestock which required his attention; but that from his wife's death he lived continuously on the farm until the time of his own death in 1930.

A witness by the name of Rose testified for the plaintiffs that he had known Mancib and had first gone to see him in 1916 on this farm, located partly in Rhode Island and partly in Massachusetts; that the house on it was located on Fall River avenue in the town of Seekonk, Massachusetts; and that off and on after 1916 he visited that house.

He testified also that Mancib was using that farm for raising garden produce of all kinds and having on it cows and pigs; that it extended into Rhode Island as far as the highway known as the Wampanoag trail; that he, the witness, worked on it for nine years as foreman for Mancib, beginning April 1, 1922, living in Mancib's house on Fall River avenue most of the time. He spoke of the barn on the Rhode

Island side, near the main road, and said that Mancib used it for hay and used the land immediately around it for pasture and that nearby was a big cultivated field. He testified further that he rebuilt for Mancib the bridge across the river in 1926 or 1927 and the gate at the bridge; and that Mancib told him that he, Mancib, owned the whole farm.

Another witness by the name of Gill testified that he was born in Mancib's house on Fall River avenue; that beginning in 1918, when he was about fourteen years old, he started to "run about" the farm of Mancib, for whom the witness's brother was working; and that Mancib had horses "with mowing machines" on the land across the bridge, on the Rhode Island side, and took care of vegetables and stored hay in the barn; that Mancib used the land there until about 1931; and that he never saw any of the Read family on that farm.

As to the tract of land in dispute in this case the defendant introduced no evidence as to its use and occupation; and the evidence in favor of the plaintiffs on this issue was undisputed and unimpeached. This evidence covered an uninterrupted period of more than ten years before the death of Mancib; and, especially when considered in view of the evidence above discussed as to the title to the property, it showed that Mancib, whose title unquestionably passed to the plaintiffs, had been for more than ten years in the uninterrupted, quiet, peaceful and actual seizin and possession of this property, claiming it as his sole and rightful estate in fee simple.

Therefore we are convinced that under the statute above mentioned the trial justice in this case was fully justified in directing the jury to return a verdict for the plaintiffs, in accordance with their motion for the direction of such a verdict, and in denying the defendant's motion for the direction of a verdict in his favor. The defendant has not insisted before us on any exception other than to those rulings.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Fergus J. McOsker, Charles R. Easton,* for plaintiffs.

*Edward M. McEntee,* for defendant.